UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ALICIA WILLIAMS,                              :

              Plaintiff,           :

                                        16cv980
    -against-                                      :

                                        OPINION & ORDER

THE DEPARTMENT OF EDUCATION,   :
OF THE CITY OF NEW YORK, *et al.*,

                                         :

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
WILLIAM H. PAULEY III, District Judge:

        Plaintiff <u>pro se</u> Alicia Williams, a former teacher at P.S. 44 in the Bronx, alleges civil-rights violations against the Department of Education of the City of New York ("DOE"), Melissa Harrow, a principal at P.S. 44, the United Federation of Teachers (the "UFT"), and Michael Del Piano, an attorney employed by the New York State United Teachers, a State-wide labor organization affiliated with UFT. Williams asserts a number of claims, including that she was suspended without justification and fraudulently induced to take an early retirement. Defendants move to dismiss, arguing that she fails to state a plausible claim and waived her right to file litigation when she accepted an early retirement. Defendants' motions are granted and this action is dismissed.

BACKGROUND

        The following facts are drawn from the Amended Complaint[1] and various

---

[1] Williams' Amended Complaint appears to omit pages 2–4, which were included in the initial Complaint. Affording Williams the appropriate deference, this Court construes the Amended Complaint to include the pages incorporated in the initial Complaint.

exhibits. The allegations in the Amended Complaint are presumed true for purposes of this motion.

Williams was a tenured teacher who worked for more than twenty years at P.S. 44. (Am. Compl. ¶¶ 4–7.) In December 2013, Williams overheard students whispering that one of them had a knife. At that time, Williams informed the students' teacher about what she overheard. That teacher, in turn, promptly questioned the student accused of having a knife. (Am. Compl. ¶¶ 8–9.) The student surrendered a small pocket knife, which the teacher then put in her own pocket. (Am. Compl. ¶ 8.)

In March 2014,[2] DOE charged Williams with violating various disciplinary policies over the previous three years and suspended her with pay. (Am. Compl. ¶ 9.) The DOE charges asserted that she failed to adequately prepare lesson plans on sixteen occasions, failed to halt student fighting, yelled at her class, videotaped students without parental consent, failed to notify the school that a student was missing, and committed other infractions. (Am. Compl. Ex. A, at 5–7.)

Williams alleges that the charges were a cover-up and that Principal Harrow conducted an improper investigation into the incident involving confiscation of a student's knife. (Am. Compl. ¶ 9.) She asserts that Harrow "coached" three students to write false statements certifying that Williams—not the other teacher—had confiscated the knife from the student. (Am. Compl. ¶ 9.)

---

[2] Williams asserts she was suspended with pay "[o]n or about one month" after the December 12, 2013 incident—i.e., January 2014. (Am. Compl. ¶ 9.) However, the documents attached to Williams' Amended Complaint indicate that DOE charges were filed on March 4, 2014; and that she was suspended with pay beginning on March 28, 2014. (Am. Compl. Ex A.)

Williams alleges that after a meeting with school officials, her union attorney, Del Piano, allegedly acted "deceitful[ly]" by "advis[ing] plaintiff to admit to [the] false allegations" and "coerced plaintiff to file for early retirement" to avoid being terminated from her position. (Am. Compl. ¶ 10.)  Williams alleges that Del Piano inadequately represented her and should have filed a motion to dismiss the charge.  (Am. Compl. ¶ 10.)

Relying on Del Piano's advice, Williams entered a "Post-Charge Stipulation of Settlement" (the "Settlement") on August 12, 2014.[3]  (ECF No. 27, at 8–12.)  Under the Settlement, Williams agreed to "irrevocably retire" from the DOE and not to accept any new DOE employment.  (Settlement at 2–3.)  In return, the DOE agreed to "withdraw, with prejudice" its disciplinary charges and "forgo any further action" on her case file.  (Settlement at 2.)

The Settlement also provided that Williams "waive[d] the right to make any legal or equitable claims or to institute legal or administrative proceedings . . . relating to or arising out of the terms and conditions of th[e] stipulation," other than to enforce compliance with the stipulation.  (Settlement at 3, ¶ 7.) Williams acknowledged that she had "access to counsel" and certified that she "entered into th[e] agreement freely, knowingly, intelligently, and openly, without coercion or duress and that she voluntarily waive[d] any statutory, contractual, or

---

[3] Williams refers to the Post-Charge Stipulation of Settlement as an "early retirement contract" in the Amended Complaint.  Therefore, while not attached to the Amended Complaint, it is properly considered within the ambit of a motion to dismiss.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . . Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.") (citations omitted).

constitutional rights that she may have [had] in the matter including her right to a hearing in accordance with Education Law §§ 3020-a or 2590-j." (Settlement at 4, ¶¶ 8–11.) Under the Settlement, Williams' early retirement took effect on November 27, 2015. (Settlement at 3.)

Williams asserts (1) that her federal and state-law rights as a tenured teacher were violated because her suspension with pay was unjustified; (2) that Defendants failed to provide her with a hearing or counsel; and (3) that counsel failed to oppose the DOE's disciplinary charge and induced her to sign the early retirement contract. (Am. Compl. ¶ 1.)

## LEGAL STANDARD

On a motion to dismiss, the factual allegations in a complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2d Cir. 2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 663, 678 (2009) (citation omitted); Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010). Where a plaintiff is proceeding pro se, courts construe "the complaint to raise the 'strongest claims that it suggests.'" Williams v. Correction Officer Priatno, --- F.3d ----, 2016 WL 3729383, at *3 (2d Cir. July 12, 2016) (citation omitted). However, a claim must nonetheless rest on "factual allegations sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A pleading offering only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim. Iqbal, 556 U.S. at 678 (citation omitted).

## DISCUSSION

The plain language of the Settlement waives Williams' putative federal and state-

law claims in connection with this action. Whether the waiver of her federal causes of action is valid turns on whether, under the "totality of the circumstances," the waiver "can be characterized as 'knowing and voluntary.'" Laramee v. Jewish Guild for the Blind, 72 F. Supp. 2d 357, 379 (S.D.N.Y. 1999). As the Second Circuit held in Bormann v. AT&T Communications, that determination involves consideration of factors such as:

> (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had possession of or access to the agreement before signing it; (3) the role of the plaintiff in deciding the terms of the agreement; (4) the clarity of the agreement; (5) whether the plaintiff was represented by or consulted with an attorney; (6) whether the consideration given in exchange for the waiver exceeds any benefits to which the employee was already entitled by contract or law; (7) whether an employer encouraged or discouraged the employee to consult an attorney; and (8) whether the employee had a fair opportunity to consult with an attorney.

Laramee, 72 F. Supp. 2d at 357 (citing Bormann v. AT&T Commc'ns, Inc., 875 F.2d 399, 402–03 (2d Cir. 1989)). "These factors are neither exhaustive nor must all of the factors be satisfied before a release is enforceable." Laramee, 72 F. Supp. 2d at 357. Whether Williams' waiver of her state-law causes of action is valid is "governed by principles of contract law, and a release that is clear and unambiguous and which is knowingly and voluntarily entered into will be enforced." Laramee, 72 F. Supp. at 359. Because the federal standard is "somewhat more stringent" than the analysis called for under "ordinary [New York State] contract law . . . if [Williams] has waived her federal claims, she has also waived her New York State law claims." Laramee, 72 F. Supp. at 359.

      Intertwined with the "validity" of the waiver is Williams' contention that the agreement is voidable based on economic duress:

> Courts will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to

5

> do an unlawful injury. To void a contract on the ground of economic duress, the complaining party must show that its agreement was procured by means of (1) a wrongful threat that (2) precluded the exercise of its free will. . . . The party seeking to void a release agreement on grounds of economic duress shoulders a heavy burden. Because an element of economic duress is . . . present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases. . . . Mere hard bargaining positions, if lawful, and the press of financial circumstances, not caused by the defendant, will not be deemed duress. A mere demonstration of financial pressure or unequal bargaining power will not, by itself, establish economic duress.

Mandavia v. Columbia Univ., 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012) (internal citations and quotation marks omitted). Additionally, in order to challenge a release on grounds of economic duress, a plaintiff must "not have ratified the release" by accepting its benefits. Loksen v. Columbia Univ., No. 12-cv-7701, 2013 WL 5549780, at *6 (S.D.N.Y. Oct. 4, 2013).

Another judge in this District recently addressed a similar claim in Mandavia v. Columbia University, 912 F. Supp. 2d 119 (S.D.N.Y. 2012). There, an ophthalmology technician working at Columbia University entered into a settlement agreement to leave his position after he was accused of sexual harassment. The agreement was negotiated by a union attorney. In return for two weeks' pay, full use of his vacation and sick days, and a "non-refundable ticket" to his "last country of residence," Mandavia agreed to resign immediately and waive his right to litigate his claims against Columbia. Mandavia, 912 F. Supp. 2d at 123. Mandavia later filed suit in district court, arguing that Columbia University and his union lawyer improperly pressured him into signing the agreement. Mandavia, 912 F. Supp. 2d at 123. Mandavia alleged that, before signing the settlement agreement, his attorney repeatedly expressed a lack of confidence in his case. Mandavia, 912 F. Supp. 2d at 124.

The district court concluded that such allegations were insufficient to plead

duress.  See Mandavia, 912 F. Supp. 2d at 129.  While the comments of Mandavia's attorney certainly showed some "hostility" to the case, and perhaps to Mandavia himself, a "generally hostile attitude in negotiations simply do[es] not constitute wrongful threats sufficient to override a person's free will."  Mandavia, 912 F. Supp. 2d at 129.  In spite of those concerns, Mandavia "undoubtedly had options other than signing the Agreement such as pursuing his legal remedies."  Mandavia, 912 F. Supp. 2d at 129.  And even if the circumstances of the settlement had amounted to duress, it would only have "rendered the contract voidable, not void."  Mandavia, 912 F. Supp. 2d at 129.  Because Mandavia "later accepted the benefits of the contract" by taking two weeks' pay and the use of his sick days and vacation days, he could no longer purport to disavow the agreement as to which the other party had already performed.  Mandavia, 912 F. Supp. 2d at 129.

In this action, the Amended Complaint does not even reach the threshold factual allegations found insufficient in Mandavia.  Indeed, Williams pleads the very factors indicating that she signed the Settlement knowingly and voluntarily.  See Bormann, 875 F.2d at 402–03.  In terms of her education and understanding, Williams was a tenured teacher with substantial experience, having worked for P.S. 44 for more than 20 years.  (Am. Compl. ¶ 7.)  While the Amended Complaint does not explain what role Williams had in drafting the Settlement, she was clearly represented during the negotiation process by her union attorney, Del Piano.  (Am. Compl. ¶ 1.)  Williams does not plead any facts suggesting that DOE interfered with that attorney-client relationship.  And Williams entered into the agreement for adequate consideration, insofar as the DOE agreed to drop all disciplinary charges and pay her for fifteen months in return for her early retirement.  (Am. Compl. Ex. A, at 5.)  The Amended Complaint

does not allege any coercive statements from her attorney.  And it does not allege that she attempted to disavow any terms of the Settlement during the fifteen months between the signing of the agreement and taking early retirement.

Williams' assertion that any waiver of her right to bring this action was involuntary is simply a "threadbare recital[] of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 556 U.S. at 678; see also Mandavia, 912 F. Supp. 2d at 129 ("Plaintiff invokes the magical word 'duress,' but in so doing he merely states a legal conclusion unsupported by enough facts to cross the line into the realm of the plausible.").  Williams pleads no facts suggestive of duress, stating only that "MICHEL [sic] DEL PIANO, acted in concert evidence **entrapment** ensued through coercion [sic]" to cause her to sign the agreement.  (Am. Compl. ¶ 2.)  Indeed, Williams' only factual quibble with the quality of Del Piano's representation is that he advised her to settle the DOE's charges instead of litigating the claim with a two-page document she provided.  Liberally construed, that document simply accuses DOE of impropriety in investigating Williams' conduct and provides Williams' own account of the December 12, 2013 knife-confiscation incident.  (Am. Compl. at 16.)  And the document does not disavow any of the conduct with which Williams was charged.   To the contrary, it appears to acknowledge the other incidents the DOE alleged.  (See Am. Compl. at 17.) ("This case has allowed the principal to bring up events that have happen[ed] during the last three years.").  In sum, Williams has not adequately pled facts from which it could be concluded that she was subject to duress, or that her waiver of her rights to bring this action was anything other

than knowing and voluntary. The Amended Complaint is dismissed.[4]

While Williams has not clearly sought amendment of her pleading, a court should ordinarily grant a pro se party the opportunity to amend[5] "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). However, leave to amend need not be granted to a pro se party if amendment would be futile. See Terry v. Incorporated Village of Patchogue, --- F.3d ----, 2016 WL 3440189, at *2 (2d Cir. June 23, 2016) (citing Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

Amendment would be futile in this action because the facts Williams has pled establish that she ratified the Settlement and the litigation waiver it contained. Assuming for a moment that Williams could plead facts suggesting duress, the Settlement would normally be voidable. But to void such a contract, "the person claiming duress must act promptly to repudiate the contract or release or [s]he will be deemed to have waived [her] right to do so." VKK Corp. v. Nat'l Football League, 244 F.3d 114, 123 (2d Cir. 2001). "If the releasing party does not promptly repudiate the contract or release, he will be deemed to have ratified it," and "[d]elays as short as six months" may constitute forfeiture. See VKK, 244 F.3d at 123. Even if there is little time for the party to "remain[] silent or acquiesc[e]" in the agreement, the party

---

[4] Accordingly, there is no need for this Court to wade into the timeliness of this action, or the difficulties Defendants would have faced in attempting to understand the basis for the Amended Complaint.

[5] Although the relevant pleading in this action is the Amended Complaint, that pleading did not result from a prior motion to dismiss. Rather, this Court ordered Williams' initial Complaint sealed because it contained certain personal identifying information. (See ECF No. 11.)

may also ratify it by "intentionally accepting benefits under the contract." VKK, 244 F.3d at 123.

In this action, Williams continued to be employed for another fifteen months after the Settlement before she took early retirement.  Because this action was not filed until three months after her retirement, the DOE had already performed its portion of the bargain, and Williams had already accepted the benefits: continuing to work and retiring with a record unblemished by the DOE's charges.  Under such circumstances, Williams' conduct constitutes ratification of the Settlement and its litigation waiver.  See, e.g., VKK, 244 F.3d at 123 (waiting 30 months to assert claim was ratification); Lamberti v. Motorola Solutions, Inc., No. 12-cv-2472, 2014 WL 1224501, at *1–2, *13 n.5 (S.D.N.Y. Mar. 24, 2014) (arranging last day of employment and accepting six weeks of additional pay constituted "ratification"); Mandavia, 912 F. Supp. 2d at 128 (accepting two weeks' additional pay and opportunity to use vacation and sick leave before final day of employment was "ratification").  Accordingly, this action is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Williams' Amended Complaint is dismissed with prejudice, and this action is dismissed.  The Clerk of Court is directed to terminate the motions pending at ECF Nos. 22, 26, and 30 and mark this case as closed.  The Clerk of Court is further directed to mail a copy of this Order to Williams and note service on the docket.

Dated: September 1, 2016  
      New York, New York

SO ORDERED:

_____  
WILLIAM H. PAULEY III  
U.S.D.J.